UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>R. SAMUELS,<br><br>    Defendant. | Case No.: 1:12-cv-01404-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT BE DENIED<br><br>[ECF Nos. 49, 51] |

Plaintiff Jesse Washington is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendant Samuels for retaliation in violation of the First Amendment.

On August 6, 2015, Defendant Samuels filed a motion for summary judgment. (ECF No. 49.) Plaintiff filed an opposition to Defendant's motion on August 31, 2015. (ECF Nos. 57, 58, 61.) Defendant filed a reply on September 28, 2015. (ECF No. 69.)

On August 11, 2015, Plaintiff filed a motion for summary judgment. (ECF No. 51.) Defendant filed an opposition on September 21, 2015. (ECF No. 68.) Plaintiff filed a reply on October 5, 2015. (ECF No. 72.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses

thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint

The events described in Plaintiff's complaint took place while Plaintiff was incarcerated at Kern Valley State Prison in Delano, California ("KVSP"). Plaintiff names R. Samuels (correctional officer) as defendant in this action ("Defendant").

Plaintiff alleges that Defendant Samuels harassed Plaintiff. (First Am. Compl. 5.[1]) In October 2010, Plaintiff received a vendor package that was processed by Samuels at the "Receiving and Release" department. (First Am. Compl. 5-6.) Plaintiff's package included food items, which Samuels tossed through the Receiving and Release window and onto the ground. (First Am. Compl. 6.) Plaintiff complained about Samuels' actions and threatened to file an administrative grievance against Samuels and his co-worker. (First Am. Compl. 6.) Samuels and the co-worker then ordered Plaintiff to submit to a clothed body search. (First Am. Compl. 6.) Samuels then escorted Plaintiff to his cell and subjected Plaintiff to an unclothed body search, while simultaneously making racial and sexual remarks toward Plaintiff. (First Am. Compl. 6-7.) Plaintiff alleges that he was discriminated against as an African American Muslim because no other white or Hispanic prisoners were subjected to such searches or harassed. (First Am. Compl. 7.)

Plaintiff was allowed to retrieve his package, but contends that a bag of Keebler's soft batch chocolate chip cookies were missing. (First Am. Compl. 7-8.) Samuels told Plaintiff to contact the company that sent the package. (First Am. Compl. 8.) After writing a letter to the company, the company instructed Plaintiff to have Samuels contact the company to confirm the issue. (First Am. Compl. 8.) Samuels told Plaintiff that he would confirm the issue with the company. (First Am.

---

[1] Citations to Plaintiff's complaint will refer to the page numbers as electronically docketed rather than the page numbers that appear on the complaint itself.

1  Compl. 8-9.) However, Samuels later told Plaintiff that he "declined" to contact the company. (First
2  Am. Compl. 9.) Plaintiff contends that Samuels refused to help Plaintiff with the cookie issue out of
3  retaliation against a grievance Plaintiff filed against Samuels for his harassing conduct. (First Am.
4  Compl. 9.)

5  On January 17, 2011, Samuels threatened to rescind Plaintiff's medical chrono for a lower
6  bunk and orthopedic shoes after Plaintiff had played a flag football game with other prisoners in the
7  exercise yard. (First Am. Compl. 9-10.) Plaintiff also contends that Samuels harassed Plaintiff during
8  a medical examination that same day. (First Am. Compl. 10.) Samuels then generated a false Rules
9  Violation Report accusing Plaintiff of threatening to harm him. (First Am. Compl. 11.)

**B.  Parties' Statement of Undisputed Facts**

1. Defendant's Undisputed Facts

a. Plaintiff was housed at Kern Valley State Prison (KVSP) during the time period relevant to this lawsuit.

b. Officer Samuels occasionally assisted Correctional Officer Williams, who was assigned to issue inmate vendor packages on Yard B. Officer Williams was responsible for issuing the packages to the inmates, having the packages opened in front of the inmates, and having the inmates sign the receipts to indicate they had received all the items in the packages. The inmates could then take their packages onto the yard or back to their cell. (Samuels Decl. ¶ 2.)

c. After Plaintiff had taken away his opened package, he later approached Officer Samuels to complain that his package was missing some cookies. Plaintiff wanted Officer Samuels to call the vendor and obtain cookies for him.[2] (Samuels Decl. ¶ 3.)

d. Plaintiff inmate [sic] filed an inmate appeal (log number KVSP-10-02146) against Officers Williams and Samuels on October 24, 2010, alleging harassment and retaliation while Plaintiff was trying to receive his package at the Receiving and Release Window. (Samuels Decl. ¶ 4.)

---

[2] Plaintiff attempts to this dispute this fact by adding he made both Samuels and Williams aware of the missing cookies. Such additional fact does not dispute the fact as presented by Defendant Samuels.

4

    e.    The inquiry at the second level of review found that Officer Williams and Samuels did not violate CDCR policy. Dissatisfied, inmate Washington submitted his appeal to the Director's Level for further review. (Samuels Decl. ¶ 5.)

    f.    In April 2011, following review of all submitted documentation and supporting arguments of the parties, including the contents of a confidential inquiry, no staff misconduct was found, and the Director's Level Appeal Decision denying this appeal was issued to inmate Washington. (Samuels Decl. ¶ 6.)

    g.    Officer Samuels informed the nurse that he had observed Plaintiff on the yard playing football, and he was sprinting, jumping and diving for the ball. Plaintiff then stated, "Yeah, I tripped while playing football." (Samuels Decl. ¶ 7.)

    h.    Officer Samuels prepared Rules Violation Report (RVR) FB-11-01-046 regarding this incident with Plaintiff under Title 15, section 3005(d)(1) for Threat on Staff. (Samuels Decl. ¶ 10.)

    i.    As reviewing supervisor, Correctional Sergeant Nuckles reviewed this RVR, classified it as "serious," and referred it for hearing with a Senior Hearing Officer (SHO). (Samuels Decl. ¶ 11.)

2.    <u>Plaintiff's Undisputed Facts</u>[3]

    a.    Plaintiff Washington was incarcerated at Kern Valley State Prison at all times relevant to his Complaint.

    b.    That Plaintiff submitted a CDCR 602 Appeal/Staff Complaint against Defendant and co-worker Williams on October 24, 2010, Log # KVSP-10-02146, alleging discrimination, retaliation, and sexual harassment by both Officers on October 20, 2015 Cloth and unclothed body Searches.

    c.    Plaintiff did not received [sic] any Rules Violation Report (RVR) or any other disciplinary Write-ups on 10/20/2010 from Defendant Samuels or co-worker Williams.

---

[3] Defendant's objections to Plaintiff's statements of fact numbers 3 and 7 as immaterial are sustained and such statements are omitted on that basis.

d. Plaintiff made Defendant Samuels and co-worker Williams aware of missing bag of Cokkies [sic] from the Walkenhorst's Package issued on 10/20/2010.

e. Plaintiff made Defendant Samuels and co-worker Williams aware of missing bag of Cokkies [sic] from the Walkenhorst's Package issued on 10/20/2010.

f. On January 17, 2011 Defendant Samuels was assigned third watch/shift 1400 to 2200 hours Unit Floor Officer at Plaintiff's assigned housing unit Facility 'B' Building#7 (FBB#7).

g. On January 17, 2011 Plaintiff was Medically examined by Licenced [sic] Vocational Nurse (LVN) at (FBB#7) at approximately 1750 hours due to injuries to Knees, Hips and Right Foot, sustained during A.M. Exercise Yard time.

h. On January 17, 2011 Defendant Samuels generated a CDC-115 (RVR) Log #FB-11-01-046 alleging that Plaintiff threatened to do harm to him through Plaintiff's Civilian Familymembers [sic].

i. At the time Defendant Samuels alleged that he was threatened by Plaintiff at (FBB#7) during third watch/shift 1400 to 2200 hours, he did not activate his institutional Personal Alarm nor immediately contact his Supervising Officers (Sergenat [sic] or Lieutenant) to report the alleged threat from and [sic] inmate (Plaintiff).

j. That no other Staffmember [sic] witnessed Plaintiff's alleged threated again Defendant Samuels' person on January 17, 2011.

k. That on February 7, 2011 the Senior Hearing Officer (SHO) Lieutenant (Lt) E. Campagna conducted the CDC-115 Rules Violation Report (RVR) Log#FB-11-01-046 Plaintiff's alleged THREATENNING DEFENDANT SAMUELS on January 17, 2011 and (SHO) (Lt) Campagna dismissed (RVR) Log#FB-11-01-046 in its entirety for insufficient evidence to sustained a guilty findings threat upon Defendant Samuels' person by Plaintiff.

1    l.    Defendant Samuels did not file any grievances with his Agency Kern Valley State Prison (KVSP) objection (SHO) (Lt) Campagna dismissal of CDC-115 (RVR) Log#FB-11-01-046 on February 7, 2011, for Plaintiff's alleged threat upon his person.[4]

m.    That on January 24, 2011 the Defendant Samuels was assigned to work at Plaintiff's Housing Unit (FBB#7) third watch/shift 1400 to 2200 hours and did not object to being subjected to the Physical Presence of Plaintiff, an inmate that he alleged had threatened to do harm to him through familymembers [sic] on January 17, 2011.[5]

n.    Again on January 31, 2011 Defendant [sic] Samuels was assigned to Plaintiff's Housing Unit (FBB#7) third watch/shift as 1400 to 2200 Unit Floor Officer and again did not object to being placed into a security threat from an inmate (Plaintiff) who had allegedly threatened his person on January 17, 2011, some two weeks later at the same housing unit.[6]

o.    Defendant Samuel was employed as Correctional Officer at (KVSP) doing [sic] all relevant times alleged herein, and was acting under the authority of State Law.

### C. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

---

[4] Defendant's objection to this statement of fact as immaterial is overruled, as the Court cannot determine this fact is immaterial.

[5] Defendant's objection to this statement of fact as immaterial is overruled, as the Court cannot determine this fact is immaterial.

[6] Defendant's objection to this statement of fact as immaterial is overruled, as the Court cannot determine this fact is immaterial.

1  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a
2  legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

3  Retaliatory motive may be shown by the timing of the allegedly retaliatory act and
4  inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-
5  1289 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not
6  sufficient. Wood v. Yordy, 753 F.3d 899, 904-905 (9th Cir. 2014) (affirming grant of summary
7  judgment where no evidence that defendants knew of plaintiff's prior lawsuit or that defendants'
8  disparaging remarks were made in reference to prior lawsuit).

9  Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive
10 judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources
11 with little offsetting benefit to anyone.'" Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (quoting
12 Sandin v. Conner, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate
13 deference and flexibility' to prison officials in the evaluation of proffered legitimate penological
14 reasons for conduct alleged to be retaliatory." Id. (quoting Sandin, 515 U.S. at 482).

### D.   Plaintiff's Motion for Summary Judgment

Plaintiff moves for judgment on the ground that Defendant Samuels generated a false RVR Log No. FB-11-01-0146 on January 17, 2011, stating that Plaintiff threatened to subject him to physical harm through civilian family members when Plaintiff was receiving medical emergency treatment at (FBB#7) during third watch/shift 1400 to 2200. After Defendant Samuels alleged to have been threatened by Plaintiff on January 17, 2011, he failed to activate his assigned institutional security alarm or immediately contact his supervising officers (sergeant or lieutenant) to report such serious threats upon an officer.

Plaintiff further argues that on January 24 and 31, 2011, Defendant Samuels was reassigned to Plaintiff's housing unit (FBB#7) and did not voice any security concerns about being in an environment where he was just threatened by an inmate who allegedly said that he intended to do harm to him through civil family members, less than one week from the threatening statements. Finally, the false (RVR Log # FB-11-01-0146) was dismissed in its entirety on February 7, 2011, by Lieutenant E. Campagna on insufficient evidence to sustain a charge of threat on a peace officer.

1  Plaintiff reasons that it is evidence that due to Defendant Samuels' failure to object to the dismissal of
2  his generated false RVR, this Court should grant Plaintiff's motion for summary judgment as a matter
3  of law on his claim of retaliation.

### E.  Defendants' Opposition to Plaintiff's Motion for Summary Judgment

Defendants oppose Plaintiff's motion for summary judgment because Plaintiff "cannot demonstrate that, based upon the undisputed facts of this case, he is entitled to summary judgment as a matter of law." (ECF No. 68, Opp'n at 1:22-24.)

Defendant argues that despite Plaintiff's claim that Defendant drafted RVR Log No. FB-11-01-046 because Plaintiff filed an inmate appeal alleging staff misconduct on the part of Samuels, Plaintiff cannot establish that Defendant Samuels' actions lacked a legitimate penological goal or chilled the exercise of Plaintiff's rights under the First Amendment.

### F.  Plaintiff's Reply to Defendants' Opposition

In reply, Plaintiff contends his summary judgment motion should be granted in its entirety based on the undisputed facts of this case and Plaintiff's clear demonstration that Defendant Samuel's actions were motived by Plaintiff's protected right to file a grievance.  Plaintiff submits that he has demonstrated that Defendant Samuel's own supervising officials stated that his actions did not substantiate sufficient facts to warrant Plaintiff to be found guilty of RVR Log Number FB-11-01-046, threat on a peace officer, and there was no legitimate correctional purpose for issuance of the RVR.

### G.  Findings on Plaintiff's Motion for Summary Judgment

Plaintiff bears the burden of proof at trial.  To prevail on his motion for summary judgment against Defendants, Plaintiff must affirmatively demonstrate that no reasonable trier of fact could other than for him.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  If Plaintiff meets his initial burden, Defendants are required to set forth specific facts showing there is a genuine issue for trial.

Plaintiff's claim is premised on retaliatory conduct by filing a false RVR Log No. FB-11-01-046 for threats made against Defendant Samuels because Plaintiff had previously filed an inmate grievance.  Plaintiff has a protected First Amendment right to file a grievance.  Watison v. Carter, 669 F.3d at 1114.  However, Plaintiff must show that his filing of the grievance was the substantial

motivation for Defendant's actions taken in relation to the issuance of a RVR. Brodheim v. Cry, 584 F.3d at 1271 (citing Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

In opposition, Defendant Samuel's declares, in pertinent part, as follows:

On January 17, 2011, I escorted [Plaintiff] form his cell to the medical examination room as requested by medical staff. Inmate Washington was telling the nurse that he had hurt his foot and skinned up his knees by tripping and falling on the yard. I informed the nurse that I observed [Plaintiff] on the yard playing football, and he was sprinting, jumping and diving for the ball. [Plaintiff] then stated "Yeah, I tripped while playing football." The nurse went to the other office to use the phone, at which time [Plaintiff] said to me, "You're a faggot and I'm gonna get your punk ass and I got family, and they'll be taking care of it you bitch." I informed [Plaintiff] that I was going to be writing him up for Threats on Staff. [Plaintiff] was escorted back to his cell without further incident.

[Plaintiff] was restrained during the escort. I did not activate my personal alarm because I did not believe that [Plaintiff's] verbal threats posed an imminent danger to myself or others at that time. Other than situations such as medical emergencies or threats of imminent harm, it is within my discretion whether to activate my personal alarm, including the instance here where [Plaintiff] threatened me.

I was concerned, however, about my and my family's safety because [Plaintiff] threatened that he had family who would "take care of it," which I understood to mean revenge or retaliation against me.

I prepared a Rules Violation Report (RVR) FB-11-01-046 regarding this incident with [Plaintiff] under Title 15, section 3005(d)(1) for Threat on Staff. [citation]

As reviewing supervisor, Correctional Sergeant Nuckles reviewed this RVR, classified it as "serious," and referred it for hearing with a Senior Hearing Officer (SHO).

Although Plaintiff pled not guilty to the RVR, he did not make a statement at the RVR hearing or deny he made those threats against Officer Samuels. Plaintiff was subsequently found not guilty of the RVR and the case was dismissed based on insufficient evidence to support the charge because Plaintiff was escorted back to his cell without incident and no alarm was sounded.

My decision to prepare RVR FB-11-01-046 regarding [Plaintiff] was based on his threat to have his family harm me, and my fear for my and my family's safety. Based on my experience, if Sergeant Nuckles, as reviewing supervisor, had determined that this RVR was inappropriate, he would not have signed it.

(ECF No. 49-5, Samuels Decl. ¶¶ 7-13.)

1  In contrast, Plaintiff contends that the RVR was issued only in retaliation for filing a prior
2  inmate grievance. (ECF No. 51, Plaintiff Decl. ¶¶ 26-27.)
3  Based on the competing evidence before the Court, Plaintiff has failed to meet his burden of
4  demonstrating that he is entitled to judgment as a matter of law, and his motion for summary judgment
5  should be denied.

6  **H.   Defendants' Motion for Summary Judgment**

7  Defendant moves for summary judgment because his preparation of the RVR was based on
8  Plaintiff's threat against him, and Plaintiff's exercise of his First Amendment rights were not chilled.
9  In the alternative, Defendant argues he is entitled to qualified immunity.

10 **I.   Plaintiff's Opposition to Defendant's Motion for Summary Judgment**

11 Plaintiff contends the facts clearly show that Defendant Samuels' actions were not in
12 accordance with his penological interest or institutional goals, but was done with ill will and solely for
13 the purpose of harassing Plaintiff, causing a chilling effect on Plaintiff exercise of his First
14 Amendment rights. Plaintiff specifically contends and reiterates that Defendant Samuels harassed
15 Plaintiff. Plaintiff received a vendor package that was processed by Samuels and another officer at the
16 "Receiving and Release" department. Plaintiff's package included food items, which Samuels tossed
17 through the Receiving and Release window and onto the ground. Plaintiff complained about Samuels'
18 actions and threatened to file an administrative grievance against Samuels and his co-worker. Samuels
19 and the co-worker then ordered Plaintiff to submit to a clothed body search. Samuels then escorted
20 Plaintiff to his cell and subjected Plaintiff to an unclothed body search, which resulted in
21 discrimination, retaliation and sexual harassment.

22 Plaintiff was allowed to retrieve his package, but contends that a bag of Keebler's soft batch
23 chocolate chip cookies were missing. Samuels told Plaintiff to contact the company that sent the
24 package. After writing a letter to the company, the company instructed Plaintiff to have Samuels
25 contact the company to confirm the issue. Samuels told Plaintiff that he would confirm the issue with
26 the company. However, Samuels later told Plaintiff that he "declined" to contact the company.
27 Plaintiff contends that Samuels refused to help Plaintiff with the cookie issue out of retaliation against
28 a grievance Plaintiff filed against Samuels for his harassing conduct.

On January 17, 2011, Samuels requested that the nurse rescind Plaintiff's medical chrono for a lower bunk and orthopedic shoes after Plaintiff had played a flag football game with other prisoners in the exercise yard. Samuels then generated the false RVR accusing Plaintiff of threatening to harm him.

Plaintiff submits that where factual disputes exist as to the parties' conduct or motive, the case cannot be resolved at summary judgment or on qualified immunity grounds.

**J.   Defendant's Reply to Plaintiff's Opposition**

Defendant argues that Plaintiff's "[o]pposition makes numerous irrelevant and conclusory claims of equal protection violations and retaliation against Defendant Officer Samuels; however, [Plaintiff] does not deny that he used profanity against Officer Samuels and threatened to harm him and his family, resulting in Officer Samuels's preparation of a Rules Violation Report (RVR) against [Plaintiff] for threats to staff. [Plaintiff] has not met his burden to oppose summary judgment because he has failed to demonstrate that the RVR did not advance a legitimate correctional goal of maintaining safety and order in a prison, nor demonstrate that the RVR chilled his exercise of his First Amendment rights. Officer Samuels is also entitled to qualified immunity because he acted lawfully and reasonably in preparing a RVR based on his concern for his and his family's safety following [Plaintiff's] threats." (ECF No. 69, Reply at 1:21-2:2.)

**K.   Analysis of Defendant's Motion for Summary Judgment**

Defendant Samuels moves for summary judgment on the ground that a legitimate penological goal was served by the issuance of the RVR, dated January 17, 2011, for threats against staff, and Plaintiff has failed to demonstrate any chilling effect on his rights under the First Amendment.

There is no dispute that Plaintiff's right to file a grievance was protected conduct under the First Amendment. In addition, there is not dispute that Plaintiff filed an inmate grievance against Defendant Samuels and officer Williams on October 24, 2010 (of which Defendant Samuels was clearly aware), alleging harassment and retaliation while Plaintiff was trying to receive his package at the Receiving and Release window. (Samuels Decl. ¶ 4.)

///

///

12

1.     Legitimate Penological Correctional Goal

The issuance of a false RVR against an inmate constitutes adverse action. Watison, 668 F.3d at 1114-1115; Brodheim, 584 F.3d at 1269. However, Plaintiff must demonstrate that the filing of his grievance was the substantial or motivating factor behind the issuance of the RVR on January 17, 2011. In this circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendant's motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d at 1289. This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity of time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendants for the adverse action were false and pretextual. McCollum v. California Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002).

In addition, in evaluating the existence of a legitimate correctional goal, there must be a valid, rational connection between the action and the legitimate neutral governmental interest put forward to justify it. Brodheim, 584 F.3d at 1272-1273 (citing Shaw v. Murphy, 532 U.S. 223, 228 (2001). In making this determination, courts should consider (1) the existence of alternate means of exercising the right available to inmates; (2) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives available to the prison for achieving the governmental objectives. Shaw, 532 U.S. at 228.

On January 17, 2011, Defendant Samuels issued Plaintiff an RVR for threatening staff, which stated that on January 17, 2011, while escorting Plaintiff from his cell to the medical examination room in the rotunda area, Plaintiff was telling the nurse that he had hurt his foot and skinned up his knees by tripping and falling on the yard. Defendant Samuels informed the nurse that he observed Plaintiff on the yard playing football and he was sprinting, jumping and diving for the ball. Plaintiff then stated, "Yeah, I tripped while playing football." When the nurse went to the other officer to use the phone, Plaintiff told Defendant Samuels "You're a faggot and I'm gonna get your punk ass and I

got family, and they'll be taking care of it you bitch." Samuels informed Plaintiff that he was going to issue a rules violation report for threats on staff. (ECF No. 49-5, Ex. B.)

At the hearing on the RVR, Plaintiff pled not guilty and declined to make a statement. Plaintiff was found not guilty because the RVR did not substantiate a threat as Plaintiff was escorted back to his cell without incident and no alarm was sounded. (ECF No. 49-5, Ex. B.)

Defendant Samuels submits that the RVR was issued because of the threats Plaintiff made against Samuels and his family which Samuels understood "to mean revenge or retaliation against me." (Samuels Decl. ¶ 9.) However, Plaintiff submits the RVR was false and issued in retaliation for having filed a prior inmate grievance against Defendant Samuels.

Defendant's argument that Plaintiff did not deny making the threating statements at his RVR hearing is not persuasive. Plaintiff pled not guilty and declined to make a statement and was thereafter found not guilty. Plaintiff cannot now be faulted in a civil rights action for not denying making such statements when there is no such requirement.

Defendant also argues that his supervisor, correctional sergeant Nuckles reviewed the RVR, classified it as "serious," and referred it for hearing with a Senior Hearing Officer. Defendant submits that based on his experience, if Sergeant Nuckles, as reviewing supervisor, had determined that this RVR was inappropriate, he would not have signed it. The Court does not find merit in Defendant's argument. Defendant Samuels argument is based on pure speculation, without any evidentiary support. In any event, the fact that the supervisor reviewed the RVR and submitted it for hearing, does not overcome the fact that Defendants Samuels may have independently issued the RVR in retaliation.

While the discipline of inmates for threats made against prison staff certainly on its face serves a legitimate penological interest, there is a genuine issue of fact as to whether the issuance of the RVR in this instance was issued for such legitimate correctional purposes or whether it was issued in retaliation. It is undisputed that only Defendant Samuels and Plaintiff were present when the alleged threat was communicated, and based on the competing evidence before the Court, there is sufficient evidence to support a rational inference of pretext and Defendant's motion for summary judgment cannot be granted.

///

      2.      <u>Chilling of Plaintiff's First Amendment Rights</u>

Defendant argues that his preparation of the RVR did not chill Plaintiff's exercise of his First Amendment right to file inmate appeals. Defendant submits that of the 34 inmate appeals Plaintiff filed at KVSP from 2009 through June 2012, at least 11 of them were initiated, or submitted for a subsequent level of review, after January 2011, which was after Defendant Samuels' preparation of the RVR on January 17, 2011.

Certainly the issuance of a false RVR in retaliation for protected conduct of filing an inmate grievance would deter a person of ordinary firmness from engaging in such protected conduct, and it is more than minimal harm. See <u>Rhodes</u>, 408 F.3d at 568-569 (holding that the proper First Amendment inquiry asks whether official's acts would chill person of ordinary firmness from future First Amendment activities). The fact that Plaintiff was found not guilty of the RVR and subsequently filed other inmate grievances does not negate the finding of a chilling effect on the exercise of his First Amendment rights. <u>See, e.g.</u>, <u>Rhodes</u>, 408 F.3d at 568 (speech can be chilled even when not completely silenced); <u>see also</u> <u>Mendocino Envtl Ctr v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999) (noting "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, we conclude the proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'") (citations omitted). The issuance of a false rules violation report in retaliation for the exercise of one's rights under the First Amendment demonstrates an intent to inhibit Plaintiff's First Amendment rights. <u>Mendocino Envtl. Ctr.</u>, 192 F.2d at 1300.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendant Samuels issued the RVR to further a legitimate penological correctional goal or whether the RVR was issued in retaliation for Plaintiff prior filing of an inmate grievance against Defendant Samuels and Officer Williams. <u>McCollum</u>, 647 F.3d at 882. Consequently, Defendant Samuel's motion for summary judgment should be denied.

      3.      <u>Qualified Immunity</u>

Defendant argues he is entitled to qualified immunity, which shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986). "[T]he qualified immunity inquiry is separate from the constitutional inquiry" and "has a further dimension." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001)) (internal quotation marks omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made. . . ." Estate of Ford, 301 F.3d at 1049 (citing Saucier at 205) (internal quotation marks omitted).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier, 533 U.S. at 201; Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

The law for a claim of retaliation was clearly established as of January 17, 2011 (the date at issue). In this case, there is a genuine issue of material fact regarding whether Defendant Samuels violated Plaintiff's First Amendment rights. Such unresolved issues of fact are also material to a proper determination of the reasonableness of Defendant Samuel's belief in the legality of his actions. If Plaintiff's version of the facts is resolved by a jury in his favor, a reasonable officer would have understood that issuing a false rules violation report in retaliation for filing a previous grievance would be unlawful. Accordingly, Defendant Samuels is not entitled to qualified immunity.

///

///

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment is DENIED; and

2. Defendant's motion for summary judgment is DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 19, 2015**

UNITED STATES MAGISTRATE JUDGE